# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| THE LANDMARK CONDOMINIUM ASSOCIATION, INC. | )<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION FILE NO.<br>)<br>) _____<br>) |
| v. | )<br>) |
| ADMIRAL INDEMNITY COMPANY | )<br>)<br>) |
| Defendant. | ) |

## PETITION FOR DECLARATORY JUDGMENT

**COMES NOW**, The Landmark Condominium Association, Inc. ("Plaintiff"), and files this Petition For Declaratory Judgment against Admiral Indemnity Company ("Defendant"), showing this Honorable Court as follows:

1.

Petitioner is a domestic condominium association with its principal place of business located at 215 Piedmont Avenue, Atlanta, Georgia 30308.

2.

Defendant is a foreign corporation with its principal office address located at 301 route 17 North, Suite 900, Rutherford, New Jersey 07070. Defendant may be served with this lawsuit through its registered agent, Mr. Glenn S. Delk, at 1355 Peachtree Street, NE, Atlanta, Georgia 30309, or as otherwise allowed by applicable law.

3.

Jurisdiction is proper in this court pursuant to 28 U.S.C. § 2201 *et seq.*, the Declaratory Judgment Act, and Rule 57 of the Federal Rules of Civil Procedure.

4.

Venue is proper pursuant to 28 U.S.C. § 1332 as Petitioner is a Georgia condominium association and Defendant is a foreign corporation with its principal place of business located in New Jersey.

5.

On or about June 20, 2023, Respondent issued Petitioner an insurance policy, Policy No. CPP21-21947510-30 (the "Policy"), whereby in exchange for payment of a premium in the amount of $62,780.00, Respondent agreed to provide property and general liability insurance coverage for the condominium located at 215 Piedmont Avenue NE, Atlanta, Georgia 30308 (the "Property"). A copy of the Policy is enclosed herein as Exhibit "1."

6.

The Policy has effective dates of June 20, 2023 through June 30, 2024, and provides for up to $32,230,924.00 in coverage for damage to the Property. Furthermore, the Policy was underwritten by Berkley Luxury Group.

7.

After Respondent issued the Policy on June 20, 2023, Respondent performed a loss control inspection on or about July 20, 2023, during which it performed an inspection of the Property and made recommendations to minimize risk. Importantly, the loss control inspection did not identify any issues with the Property's sprinkler systems or commercial units.

8.

On or about January 17, 2024, an accidental fire occurred which caused significant damage to the Property.

9.

Upon learning of the fire, Petitioner reported the fire to Respondent, and in response, Respondent assigned the fire Claim No. 2041684 (the "Claim").

10.

In addition, Respondent retained Mr. Patrick Washington of Sedgwick Delegated Authority to adjust the Claim, and Mr. Washington retained Mr. Steve Lehman, of JS Held, to serve as a building consultant.

11.

Subsequent to the fire, Mr. Washington and Mr. Lehman performed inspections of the Property with Petitioner and Petitioner's representatives in an effort to reach a consensus on the scope of damages and necessary repairs.

12.

In fact, at the request of Petitioner, Respondent retained EFI Global to perform a site inspection of the Property and prepare a Combustion Byproduct (CBP) Damage Assessment & Remediation Protocol (the "Protocol"). A copy of the Protocol is enclosed herein as Exhibit "2."

13.

After EFI Global issued the Protocol, Respondent, through Mr. Washington, approved the Protocol and informed Petitioner that it should perform the remediation services as set forth in the Protocol.

14.

Following the direction as instructed by Respondent, Petitioner retained Epic, LLC, a general contracting firm, to perform the remediation services as set forth in the Protocol.

15.

As of the filing of this Petition, Epic has continuously provided services at the Property in accordance with the Protocol. Currently, Epic has maintained

equipment at the Property for stabilization purposes, and as of the filing of this action, Epic has invoiced Petitioner the amount of $1,528,624.92 for services rendered. However, Epic is unable to continue to provide these services without Respondent issuing payment accordingly.

16.

On or about April 30, 2024, Respondent issued a Notice of Non-Renewal of Insurance to Petitioner, in which it informed Petitioner it would not be renewing the Policy "due to adverse loss history." A copy of the Notice of Non-Renewal of Insurance is enclosed herein as Exhibit "3."

17.

Thereafter, on or about May 9, 2024, Respondent, for the first time, issued a Reservation of Rights letter to Petitioner, in which Respondent stated that: (1) It is questionable whether the Policy application contained accurate information; (2) It is questionable as to whether there has been a breach of any of the Policy's conditions in conjunction with representations made during the application process and presentation of the Claim; and (3) There are questions as to whether the concealment or fraud provision of the Policy has been voided. A copy of the May 9, 2024 Reservation of Rights letter is enclosed herein as Exhibit "4."

18.

In response to the May 9, 2024 Reservation of Rights letter, Petitioner sent written correspondence to Respondent on May 20, 2024, in which Respondent was informed that Petitioner adamantly denied any breach of the Policy and denied it engaged in any concealment or fraud in connection with the application for insurance or the Claim. Additionally, Petitioner demanded that Respondent continue to adjust the Claim and release additional monies so that Petitioner's mitigation contractor could be paid for services rendered. A copy of the May 20, 2024 written correspondence is enclosed herein as Exhibit "5."

19.

As a direct result of Respondent's non-renewal of the Policy during the pendency of the Claim, Petitioner was forced to seek other insurance to provide coverage for the Property, and ultimately was forced to pay a premium of $525,200.00 for property coverage, and a premium of $41,306.72 for general liability coverage, for a total of $566,506.72.

20.

On June 7, 2024, Respondent, through counsel, sent written correspondence to Petitioner, in which Petitioner was informed of potential inaccuracies in the application for insurance regarding the Property's sprinkler system and presence of commercial units. A copy of the June 7, 2024 written correspondence is enclosed herein as Exhibit "6."

21.

In response, on July 3, 2023, Petitioner, though counsel, informed Respondent that it had now been approximately two (2) months since Respondent issued the May 9, 2024 Reservation of Rights letter, and that Respondent's continuous delays were going to cause additional damages to the Property and to Petitioner. A copy of the July 3, 2024 written correspondence is enclosed herein as Exhibit "7."

22.

In response, on or about July 8, 2024, Respondent's counsel sent written correspondence to Petitioner, in which Respondent requested Petitioner to produce documents covering sixteen (16) different topics. A copy of the July 8, 2024 correspondence is enclosed herein as Exhibit "8."

23.

Thereafter, on July 10, 2024, Petitioner, through counsel, informed Respondent that it would produce documents as quickly as possible, and also

stated, in part, as follows: "We all know what is happening here. Once your client fully realized the extent of damage, this is nothing more than an ill-fated attempt to come up with a way to not pay the claim. And just so you are aware, we know that Admiral does not have any underwriting requirements for a sprinkler system in the building." The July 10, 2024 written correspondence also stated, in part as follows: "Quite frankly, your client performed an inspection of the property within 30 days of binding coverage and was clearly aware of the composition of the building at that time." A copy of the July 10, 2024 written correspondence is enclosed herein as Exhibit "9."

24.

On July 19, 2024, Petitioner responded to the July 8, 2024 written correspondence, provided requested documents, and informed Respondent as follows: "Furthermore, on behalf of Landmark, I am once again demanding an acknowledgement of coverage and for this claim to be properly adjusted. Admiral's specious position on coverage is leading to additional damages at the property and to Landmark as a whole." A copy of this July 19, 2024 correspondence is enclosed herein as Exhibit "10."

25.

On August 20, 2024, after producing additional documents Petitioner received from its insurance agent, Petitioner once again demanded Respondent to acknowledge coverage of the Claim, and again reminded Respondent of the post-binding inspection that was conducted at the Property in July 2023, and that Respondent's inaction was not only causing additional damages to Petitioner, but it was leaving Petitioner in the dark. A copy of this August 20, 2024 correspondence is enclosed herein as Exhibit "11."

26.

When producing all documents requested, Petitioner included a document from Berkley Luxury Group, which specifically states that for the policies underwritten by Berkley Luxury Group, including policies from Respondent, there is no sprinkler requirement. A copy of this document is enclosed herein as Exhibit "12."

27.

Despite receiving the August 20, 2024 correspondence and all documents in the possession of Petitioner, Respondent has completely failed to respond and/or take any additional action with respect to the Claim.

28.

As a result of Respondent's inaction, Petitioner is left in a position of uncertainty, as it does not know whether Respondent will acknowledge coverage of the Claim and adjust the Claim in good faith.

29.

Additionally, Respondent has been made aware that its continued delays are causing additional damages to Petitioner. However, Respondent continues to improperly delay adjustment of the Claim.

30.

As a result of Respondent's actions, not only is Petitioner in a position of uncertainty, but it has also been forced to commence this action in an effort to have Respondent provide coverage in accordance with the terms and conditions of the Policy.

## COUNT I – DECLARATORY JUDGMENT

31.

Petitioner reincorporates by reference its allegations contained in Paragraphs 1-30 above.

32.

Pursuant to the terms and conditions of the Policy and applicable law, the Claim is a covered cause of loss and Respondent should provide coverage and payment for the damages sustained.

33.

However, Respondent continues to refuse to acknowledge coverage of the Claim and adjust the Claim in good faith, which has created a dispute between Petitioner and Respondent.

34.

The position currently taken by Respondent has left Petitioner in a position of uncertainty, as it is operating in the dark regarding appropriate measures to take as a direct result of the damages caused by the January 17, 2024 fire.

35.

As a result of the foregoing, Petitioner is requesting this Honorable Court to declare that the Claim is a covered loss pursuant to the terms and conditions of the Policy and applicable law, and to declare that Respondent has an obligation to provide coverage and compensate Petitioner for all damages sustained.

## COUNT II - ATTORNEY'S FEES AND COURT COSTS

36.

Petitioner reincorporates by reference its allegations contained in Paragraphs 1-35 above.

37.

Respondent has been stubbornly litigious, has acted in bad faith, and has caused Petitioner unnecessary expense, and as a result thereof, Respondent shall be responsible for the payment of Petitioner's attorney's fees and court costs.

## PRAYER

WHEREFORE, Petitioner respectfully prays that the Court:

a. Declare that the Claim is a covered cause of loss pursuant to the terms and conditions of the Policy and applicable law;

b. Declare that Respondent has an obligation to compensate Petitioner for all damages sustained;

c. Award Petitioner its reasonable attorney's fees and court costs;

d. Award Petitioner pre-judgment and post-judgment interest; and

e. Award Petitioner all further relief this Honorable Court deems just.

## DEMAND FOR TRIAL BY JURY

Petitioner requests a trial by jury pursuant to Fed. R. Civ. P. 38.

Respectfully submitted this 16th day of September 2024.

**WEINSTEIN & BLACK, LLC**

s/Michael B. Weinstein
Michael B. Weinstein
Georgia Bar No. 746386
Weinstein & Black, LLC
3050 Amwiler Road, Suite 200-C
Atlanta, Georgia 30360
Telephone: (404) 228-2629
mike@wblegal.net

*Attorney for Petitioner*